IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-922

Filed: 5 May 2015

North Carolina Industrial Commission, I.C. No. 931701

BRUCE D. TAYLOR, Plaintiff,

v.

HOWARD TRANSPORTATION, INC. and TRAVELERS INDEMNITY COMPANY OF AMERICA, Defendants.

Appeal by defendants from opinion and award entered 14 April 2014 by the North Carolina Industrial Commission. Heard in the Court of Appeals 6 January 2015.

*Holt, Longest, Wall, Blaetz & Moseley, PLLC, by W. Phillip Moseley, for plaintiff-appellee.*

*Hedrick Gardner Kincheloe & Garofalo, LLP, by Neil P. Andrews and M. Duane Jones, for defendants-appellants.*

STROUD, Judge.

Howard Transportation, Inc. ("HT") and Travelers Indemnity Company of America (collectively "defendants") appeal from an opinion and award by the Full Commission. Defendants contend that the Commission (1) lacked subject-matter jurisdiction over a workers' compensation claim by Bruce D. Taylor ("plaintiff") and (2) erred in concluding that plaintiff is entitled to ongoing disability compensation. We vacate the Commission's opinion and award.

I.    Factual Background

In 2002, plaintiff, a resident of Burlington, North Carolina, sent an employment application to Dorothy Ivey, a recruiter for HT, a trucking company. On 25 September 2002, Ivey sent plaintiff's employment application to HT's safety department in Ellisville, Mississippi. After HT's employees confirmed plaintiff's eligibility, Ivey arranged for a van to pick up plaintiff and take him to HT's headquarters in Laurel, Mississippi. After arriving in Mississippi on 9 December 2002, plaintiff successfully completed HT's orientation, a road test, a drug test, and a physical exam. HT then hired plaintiff as a truck driver. On or about 13 June 2003, plaintiff resigned his employment with HT and began working for another trucking company.

On or about 14 May 2004, Michele King, a recruiter for HT, sent plaintiff a letter inviting him to reapply to work for HT. Plaintiff called King from his North Carolina residence and told her that he would be willing to work for HT if HT gave him a better truck and assigned him to a different dispatcher. King responded that she would need to talk with Suzanne Skipper and Larry Knight, two of HT's managers. King called plaintiff and told him that Skipper and Knight were willing to meet plaintiff's conditions if plaintiff would "come back to work." Plaintiff responded that he would "come back to work," and King arranged for a van to pick up plaintiff and take him to Laurel, Mississippi. On 16 August 2004, plaintiff arrived in Mississippi. Over the next three days, he completed HT's orientation, a road test, a

drug test, a physical exam, and employment paperwork. On 19 August 2004, HT rehired plaintiff as a truck driver.

On 6 October 2006, while working for HT, plaintiff was struck by a pick-up truck at a truck stop in Maryland. Plaintiff sustained injuries to his left knee, hip, and back.

## II. Procedural Background

On 3 June 2008, plaintiff filed Industrial Commission Form 18 giving notice of his workers' compensation claim. On 14 August 2008, defendants filed Form 61 denying plaintiff's claim. On or about 19 August 2010, Deputy Commissioner Philip Baddour found that the Commission lacked subject-matter jurisdiction over plaintiff's claim and ordered that plaintiff's claim be dismissed with prejudice. Plaintiff appealed to the Full Commission. In its 11 March 2011 opinion and award, the Full Commission by Commissioner Bernadine Ballance found that the Commission had subject-matter jurisdiction over plaintiff's claim, reversed the deputy commissioner's opinion, and remanded the case for a full evidentiary hearing. Defendants appealed to this Court. On 6 March 2012, this Court held that the Full Commission's 11 March 2011 opinion and award was a non-appealable interlocutory order and dismissed defendants' appeal. *Taylor v. Howard Transp., Inc.*, 219 N.C. App. 402, 722 S.E.2d 212 (2012) (unpublished).

On or about 12 September 2013, Deputy Commissioner Myra Griffin awarded plaintiff, *inter alia*, $579.73 per week in temporary total disability benefits from 6 October 2006 to 18 June 2007 and from 5 November 2009 continuing until "Plaintiff returns to work or further order of the Commission." Defendants appealed to the Full Commission. In its 14 April 2014 opinion and award, the Full Commission by Commissioner Danny Lee McDonald affirmed with modifications Deputy Commissioner Griffin's opinion and award. On or about 21 April 2014, defendants received by certified mail the Full Commission's 14 April 2014 opinion and award. On 19 May 2014, defendants timely gave notice of appeal.

III.   Subject-Matter Jurisdiction

Defendants contend that the Commission (1) lacked subject-matter jurisdiction over plaintiff's workers' compensation claim and (2) erred in concluding that plaintiff is entitled to ongoing disability compensation. Because we hold that the Commission lacked subject-matter jurisdiction over plaintiff's claim, we do not reach defendants' second issue.

A.   Standard of Review

> As a general rule, the Commission's findings of fact are conclusive on appeal if supported by any competent evidence. It is well settled, however, that the Commission's findings of jurisdictional fact are *not* conclusive on appeal, even if supported by competent evidence. The reviewing court has the right, and the duty, to make its own independent findings of such jurisdictional facts from its consideration of all the evidence in the record.

*Perkins v. Arkansas Trucking Servs., Inc.*, 351 N.C. 634, 637, 528 S.E.2d 902, 903-04 (2000) (citations and quotation marks omitted).

B.    Analysis

N.C. Gen. Stat. § 97-36 provides:

> Where an accident happens while the employee is employed elsewhere than in this State and the accident is one which would entitle him or his dependents or next of kin to compensation if it had happened in this State, then the employee or his dependents or next of kin shall be entitled to compensation (i) if the contract of employment was made in this State, (ii) if the employer's principal place of business is in this State, or (iii) if the employee's principal place of employment is within this State[.]

N.C. Gen. Stat. § 97-36 (2013). Neither HT's principal place of business nor plaintiff's principal place of employment was in North Carolina. Thus, in order for the Commission to have subject-matter jurisdiction, plaintiff's contract of employment must have been made in North Carolina. *See id.*

"To determine where a contract for employment was made, the Commission and the courts of this state apply the 'last act' test. For a contract to be made in North Carolina, the final act necessary to make it a binding obligation must be done here." *Murray v. Ahlstrom Indus. Holdings, Inc.*, 131 N.C. App. 294, 296, 506 S.E.2d 724, 726 (1998) (citations, quotation marks, and brackets omitted) (citing *Thomas v. Overland Express, Inc.*, 101 N.C. App. 90, 96, 398 S.E.2d 921, 926 (1990), *disc. review denied*, 328 N.C. 576, 403 S.E.2d 522 (1991)).

In *Murray*, the defendant's agent telephoned the plaintiff at his North Carolina residence and offered him a position in Mississippi to work as an instrument and pipe foreman. *Id.* at 295, 506 S.E.2d at 725. The plaintiff had previously worked for the defendant. *Id.*, 506 S.E.2d at 725. The plaintiff accepted the offer on the phone and traveled to the Mississippi work site. *Id.*, 506 S.E.2d at 725. The plaintiff was required to fill out certain administrative paperwork, but because he was a rehire, he was not required to submit to a physical exam, drug test, or go to the local employment security office. *Id.*, 506 S.E.2d at 725. This Court held that, because the paperwork was "mostly administrative[,]" the last act of the employment contract took place in North Carolina. *Id.* at 297, 506 S.E.2d at 726-27.

In *Thomas*, the plaintiff, a North Carolina resident and experienced truck driver, applied for a job with the defendant by filling out an application form and submitting it at the defendant's terminal in North Carolina. *Thomas*, 101 N.C. App. at 91, 398 S.E.2d at 922. The defendant arranged for the plaintiff to fly to Indiana where he completed an orientation, a road test, and a physical exam. *Id.* at 91, 94, 398 S.E.2d at 922, 924. While the plaintiff was in Indiana, the defendant offered to hire the plaintiff, and the plaintiff accepted. *Id.* at 94-95, 398 S.E.2d at 924-25. This Court held that the last act of the employment contract took place in Indiana, not North Carolina. *Id.* at 97, 398 S.E.2d at 926.

On or about 14 May 2004, King sent plaintiff a letter inviting him to reapply to work for HT. Plaintiff called King from his North Carolina residence and told her that he would be willing to work for HT if HT gave him a better truck and assigned him to a different dispatcher. King responded that she would need to talk with Skipper and Knight. King called plaintiff and told him that Skipper and Knight were willing to meet plaintiff's conditions if plaintiff would "come back to work." Plaintiff responded that he would "come back to work," and King arranged for a van to pick up plaintiff and take him to Laurel, Mississippi. On 16 August 2004, plaintiff arrived in Mississippi. Over the next three days, he completed an orientation, a drug test, a physical exam, and employment paperwork. In her deposition, Ivey stated that HT's orientation includes a road test, and plaintiff admits that he completed a road test during his 2004 orientation. Additionally, plaintiff testified that HT would not have allowed him to drive one of their trucks if he had not passed the drug test and physical exam:

> [Defendants' lawyer]: Now when you were down there in August of '04, did you—did you pick up your truck down there, also?
>
> [Plaintiff]: Yes.
>
> . . . .
>
> [Defendants' lawyer]: Okay. And you actually didn't get assigned your truck until after you completed your physical and passed your DOT exam, correct?

[Plaintiff]: Yeah—about three days.

[Defendants' lawyer]: Okay. And so you were there for three days before they let you take a truck and leave, correct?

[Plaintiff]: Yes.

. . . .

[Defendants' lawyer]: Right. And you agree that Howard wouldn't—as a new hire, [HT] wouldn't let you take one of their trucks out of their Mississippi terminal until you had passed your DOT physical, correct?

[Plaintiff]: Yes.

[Defendants' lawyer]: And you agree that [HT] won't let you take one of their trucks out of their terminal in Mississippi until you'd passed their drug test?

[Plaintiff]: Yes.

Additionally, in her deposition, Ivey similarly stated that plaintiff would not have been hired as an employee if he had failed one of these tests:

[Defendants' lawyer]: If any of these things weren't completed in terms of the written test or the road test or the criminal checks or things of that nature, would [plaintiff] be considered an employee of [HT] before that?

. . . .

[Ivey]: No.

. . . .

[Defendants' lawyer]: Okay. Well, do you have an opinion of when someone would be effectively an employee of [HT]?

. . . .

[Ivey]: Again, as I said, they have to go down and pass their physical, their drug screen, their road test, and complete the final paperwork in Mississippi.

[Defendants' lawyer]: Have you sent people down to Mississippi that weren't hired by [HT]?

[Ivey]: I have.

[Defendants' lawyer]: And what reasons were they not hired?

[Ivey]: Various things—failing drug screens, not being able to pass the physical. I've actually had drivers . . . send me an application that someone else filled out for them, and when they would get to Mississippi wouldn't be able to read or write, things like that.

[Defendants' lawyer]: All right. So you're aware of people who—who have gotten the quote approval, went down to Mississippi, and then never became employees of [HT]?

[Ivey]: Yes.

[Defendants' lawyer]: How often does that happen, percentage wise, to your knowledge?

[Ivey]: Maybe one out of ten.

On 19 August 2004, at the end of the orientation, Skipper signed a payroll change notice form in which she rehired plaintiff. The effective date of the payroll change is 16 August 2004, the day plaintiff began the orientation.

We hold that this case is more closely analogous to *Thomas* than to *Murray*.

Like in *Thomas* and unlike in *Murray*, plaintiff was required to complete a three-day orientation, a road test, a drug test, and a physical exam outside North Carolina, a hiring procedure extending well beyond "mostly administrative" paperwork. *See Thomas*, 101 N.C. App. at 91, 94, 398 S.E.2d at 922, 924; *Murray*, 131 N.C. App. at 297, 506 S.E.2d at 726-27. HT did not consider plaintiff an employee until after he had successfully completed the orientation, road test, drug test, and physical exam.

Plaintiff mentions that he was paid during the orientation since the effective rehire date listed on the payroll change notice form is 16 August 2004, the date he arrived in Mississippi. But Skipper signed that form on 19 August 2004, at the end of the orientation. The fact that plaintiff was paid for this three-day period does not vitiate the fact that plaintiff's employment was contingent upon his successful completion of the orientation, road test, drug test, and physical exam. Following *Thomas*, we hold that the last act of the employment contract took place in Mississippi. *See Thomas*, 101 N.C. App. at 97, 398 S.E.2d at 926. Accordingly, we hold that the Commission lacked subject-matter jurisdiction to hear plaintiff's claim. *See* N.C. Gen. Stat. § 97-36.

IV.    Conclusion

Because the Industrial Commission lacked subject-matter jurisdiction to hear plaintiff's claim, we vacate the Commission's 14 April 2014 opinion and award.

VACATED.

- 10 -

Judges BRYANT  and HUNTER, JR concur.